MARTHA J. SHOOP v. JOHN H. BURNSIDE *et al.*

No. 15,656.   (98 Pac. 202.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Specific Performance.* Specific performance is not a matter of right but of equity, and rests in the sound legal discretion of the court. Before the relief will be granted the contract must appear to have been entered into with fairness and without any undue advantage or imposition, and the facts and circumstances must be such as appeal to the conscience of the court and compel its discretion.

2. ——— *Same.* The evidence in this case examined and held not to warrant a decree for the specific performance of a contract for the sale of land.

Error from Finney district court; WILLIAM EASTON HUTCHISON, judge. Opinion filed November 7, 1908. Reversed.

STATEMENT.

THIS is a suit for the specific performance of a contract for the sale of a quarter-section of land in Finney county. John H. Burnside is the real plaintiff. He had resided in Finney county at the time of the contract for about five years. He was well acquainted with the land and personally interested in other land in that vicinity. The defendant, Martha J. Shoop, is an elderly lady of some eighty years of age. She formerly lived on the land but had moved away from it, and for fourteen years had been living in Oklahoma, at a distance of over 400 miles from the land. She had not been in Finney county from the time she moved away except once, about eight years before these transactions. She

had no other property except this, was inexperienced in business, slightly hard of hearing, but in possession of her faculties and capable of transacting business for herself.

In the months of August and September, 1905, negotiations were pending for the erection of a sugar factory at Garden City, meetings were being held for that purpose, and the value of farm lands in that vicinity was rapidly increasing. The land in question is situated six miles from a railroad station. A portion of it is under cultivation, all of it is susceptible of irrigation, and at the time the suit was tried it was surrounded by farms on which sugar-beets were successfully produced, and there was a ditch along one side of it.

Mrs. Calhoun, a granddaughter of the defendant, lived in Finney county, and on August 25, 1905, wrote to the defendant, at the request of Burnside, stating that there was a man who would give $850 for the land. On September 12 she wrote again to defendant, as follows:

"GARDEN CITY, KAN., September 12, 1905.

"MY DEAR GRANDMOTHER—There was a man here yesterday wanted me to write to you about buying your place. He will give you $850 cash. Guess that you will understand that I don't remember whether I ever told you anything about that land south of you or not, I have always got so much to think of; it belongs to the ditch company. . . . That man wants to know right away about the place, because if he don't get that he wants to get another place. I am not running your business, but seems to me like I would let him have it; last month was awful dry and hot; it is so dry that you can't plow at all. I will close, write soon, from Callie."

On September 18 Burnside wrote to defendant as follows:

"September 18, 1905.

"*Mrs. Martha J. Shoop:*

"DEAR MADAM—I have had some conversation with your granddaughter in regard to the qtr. of land you own here and are offering for sale, and she tells me you are willing to make a time sale of it. This, however,

would be no object to me, though it might be to some others. I will pay you $850 for the quarter in cash, and will pay the money at the bank here after having examined deed and abstract for same. I have another qtr. offered me which I will take if we do not deal, so will you kindly oblige me by answering at your earliest convenience.      Very truly yours,

                    J. H. BURNSIDE."

On September 19, at Burnside's request, the granddaughter wrote again, as follows:

              "GARDEN CITY, September 19.

"MY DEAR GRANDMOTHER—I received your very kind and welcome letter yesterday. We are just tolerably well. . . . Well that man thinks that he can't go any higher than $850. He don't want to buy it on time; he wants to pay cash. Of course it is none of my business whether you sell it or not. Well I must close, love to all from all, goodbye, from Callie."

Burnside agreed to pay Mrs. Calhoun $50 as a commission in the event a sale was made. On September 23 defendant wrote to him and declined to accept his offer of $850, but stated that her price for the land was $1000. It appears that this was the price at which she had held the land for a number of years. Burnside immediately wrote accepting the offer of $1000, and enclosed a deed to be executed. On October 2 defendant acknowledged receipt of the deed, and said she would sign it if he would make it all right with a tenant, who had the promise of the land for another year. Thereupon Burnside sent a statement to defendant, signed by the tenant, disclaiming any right to the land, and requested that she execute the deed and send it to the bank, when he would pay the $1000. A week later the defendant wrote to Mr. Burnside as follows: "After considering the matter I have decided not to sell my farm at present." It appears from the testimony of defendant that her reason for refusing to carry out the contract was that she had heard in the meantime that there was a boom at Garden City, of which she knew nothing at the time she fixed her price. There was

ample evidence that at about this time the market value of farm lands generally near Garden City was rapidly increasing. This suit was then brought to compel performance.

The case was tried to the court, and findings of fact and conclusions of law were made. After reciting the principal facts the court found that Burnside had taken no undue advantage of the defendant, that there was no misrepresentation to her, either by Burnside or Mrs. Calhoun, and that the land was worth something more than $1000 at the time the contract was entered into. As conclusions of law the court held that inadequacy of price is not a sufficient reason for revoking a contract regularly made, and that Burnside was entitled to a conveyance on the payment of $1000. The defendant filed motions to set aside certain special findings and conclusions of law, for additional special findings of fact, and for a new trial. These motions were denied, and the defendant brings error.

*Pearce & Marmon, W. R. Hopkins,* and *R. J. Hopkins,* for plaintiff in error.

*George Lynn Miller,* and *Orlo H. Foster,* for defendants in error.

The opinion of the court was delivered by

PORTER, J.: In the view we have taken of this case there are but two findings of fact which we think require comment. The twenty-third finding is as follows:

"That the actual market value of the land in controversy during the latter part of September, 1905, can not be found and stated by the court from the testimony introduced, but that it was worth something more than $1000 at or about that time."

While it may have been difficult for the court to find the actual market value of the land at the time the contract was made, we think the evidence would have warranted a finding that its market value was in the neigh-

Shoop v. Burnside.

borhood of $2000 at the time. The eighteenth finding is as follows:

"That the influence of Mrs. Calhoun upon the defendant, if any, by reason of her recommendation that she sell for $850, was of no effect, as the defendant refused to accept that amount and testified that she acted upon her own judgment in the matter."

This finding is based upon a mistaken inference of the court from a fact in evidence and a misconception or oversight with respect to the testimony. Because defendant refused to accept the offer of $850 it by no means follows that the advice of the granddaughter had no effect as an inducement for her offer to take $1000. It would, in our opinion, naturally have considerable influence in determining the amount she would ask. As to the second reason suggested by the court, it is true that the defendant stated that she acted on her own judgment in the matter, but her whole testimony must be taken together, and she testified as follows:

"Ques. Mrs. Shoop, you may state what influence these letters you received from your granddaughter had upon you in regard to the sale of this land? Ans. Well, she advised me to sell it, and told me she thought it was a good price for it, and me not knowing anything about it it had some influence for me to sell it.

"Q. State whether or not you relied upon these suggestions as contained in these letters from your granddaughter. A. Yes, sir."

To say that the letters of the granddaughter had no effect as an inducement for defendant to fix her price at $1000 is to leave out of account the inferences and presumptions which naturally arise under the circumstances. Finding No. 23 should have been modified, and finding No. 18 set aside.

Specific performance is not a matter of right, but of equity. A contract to sell or purchase may be regularly made, yet specific performance will not follow as a matter of course. (*Fowler v. Marshall*, 29 Kan. 665; *Bird v. Logan*, 35 Kan. 228, 10 Pac. 564.) The appli-

cation is addressed to the sound legal discretion of the court, and courts will be governed by the facts and circumstances of each case. (*Reid v. Mix*, 63 Kan. 745, 66 Pac. 1021, 55 L. R. A. 706; *Viele v. Troy and Boston R. R. Co.*, 21 Barb. [N. Y.] 381.) Although the proof might come far short of a showing sufficient to authorize the court to grant a rescission or cancelation of a contract, still on the same proof equity will often refuse to compel performance. For instance, a court of equity will not decree a rescission of a contract except for fraud or mistake. Inadequacy, improvidence, surprise and hardship are not sufficient, yet the presence of these, amounting to unfairness, even without fraud or mistake, will prevent a court of equity from ordering performance. While inadequacy of price is not sufficient of itself to avoid a decree for performance, it is a circumstance which will be taken into consideration with all the facts in determining whether a court of equity is called upon to afford relief. The opportunities of parties to know the true situation may always be taken into consideration, although it can not be said that it is the duty of the purchaser in each instance to inform the seller of the reasons for his desire to purchase nor the facts and circumstances which in his opinion enhance the value of the land.

If in this case Burnside had himself written to the defendant offering her $850 for the land, without expressing any opinion as to its value or his ability to purchase other land, and she had replied offering to take $1000, and he had accepted, an entirely different case would be presented, and his failure to inform her of the new conditions and the inadequacy of the consideration might not be sufficient grounds to prevent specific performance. The contract in this case was made with a woman eighty years of age, living at a great distance from the land. For eight years she had not been near the land, and was wholly ignorant of what Burnside well knew—that there had been a sudden rise in the value of all farm lands in that vicinity.

Instead of writing to her directly or employing a person in no way connected with her to act as his agent, he procured the granddaughter to write the letters for the purpose of inducing the defendant to consent to the sale of her land at about one-half of its actual value. The letters of the granddaughter contained no suggestion of any interest on the part of the writer other than what the defendant might have naturally assumed to be based on a desire to have her make a good bargain. Defendant was not informed that her granddaughter was to receive $50 in case there was a sale. And the statement in the letter of September 19 that the buyer would not go any higher than $850 was misleading, as he was in fact expecting to pay $50 more.

It is not necessary to say in this case that Burnside was guilty of fraud. The doctrine is well established that before a court of equity will enforce performance of a contract of this kind it must appear to have been fairly entered into without any sort of advantage or imposition—must, in other words, appeal to the conscience of the court and compel its discretion. The situation of the parties and all the facts and circumstances of this case do not so appeal to our discretion, nor, in our opinion, warrant a decree compelling the defendant to convey. As two of the findings, however, can not stand another trial will be necessary.

The judgment is reversed and a new trial ordered.