No. 19,700.

ASHFORD W. GREENWOOD, *Appellee*, v. ANNIE M. GREENWOOD, *Appellant*.

### SYLLABUS BY THE COURT.

1. VENDOR AND PURCHASER—*Action for Specific Performance—Subject of Fraud in Procuring Contract Res Judicata.* The subject of fraudulent representations by the vendee of land, whereby the vendor was induced to contract, adjudicated against the vendor in an action to cancel the contract because induced by fraudulent representations, is *res judicata* in a subsequent action brought by the vendee to compel specific performance of the contract.

2. SAME—*Divorced Wife Could Lawfully Contract to Convey Land Awarded as Alimony.* In an action for divorce the plaintiff was awarded the custody and maintenance of two minor children and was given a tract of land as alimony, the income from which so far as might be necessary was to be devoted to the maintenance of the children until the younger child became of age. *Held*, the plaintiff could lawfully contract to convey the land when the younger child became of age and could lawfully bind herself personally by a contract to deliver possession before that time.

3. ACTION—*Specific Performance—"Adequate Consideration" Defined.* In an action for specific performance the term "adequate consideration" does not mean the full equivalent of value. It means a consideration which is not so greatly disproportionate to value as to offend against the fair dealing which should characterize business transactions.

4. SAME—*Decree of Specific Performance Approved.* Findings of fact examined and a judgment based thereon for specific performance of a contract of the kind indicated and for rents and profits approved.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed November 6, 1915. Affirmed.

*W. R. Hazen, H. W. Page, Bennett R. Wheeler,* and *John F. Switzer,* all of Topeka, for the appellant.

*Z. T. Hazen,* and *R. H. Gaw,* both of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: In December, 1897, Annie M. Greenwood, as plaintiff, obtained a divorce from Ashford W. Greenwood. She was given the custody, maintenance and education of the minor children, Grace and Helen, Helen being the younger. The decree provided further as follows:

"And it is further ordered and decreed that the said plaintiff shall have, and there is hereby set apart to her as her separate estate, as and for her alimony in said action the following-described real estate [describing it], to be held by the said Annie Greenwood, in trust for Grace and Helen Greenwood until the said Helen Greenwood shall attain her majority, and at the expiration of said time or upon the death of both of said children before said time the title to said property shall vest in the said Annie Greenwood absolutely and in fee."

In February, 1909, Annie M. Greenwood, desiring to dispose of the land on contract and to convey the full title thereto when she became absolute owner, contracted to sell and convey the land by warranty deed to her former husband for a stated consideration payable in installments which bore interest. Possession was to be delivered at once. One thousand dollars of the consideration was to be paid to the children, Grace and Helen, on or before March 1, 1914, and a further sum of $125 was to be paid to them on delivery of the deed. The younger child became of age on October 17, 1913. Possession was not delivered to the vendee and his timely tenders of payments to the vendor were refused. On October 18, 1913, the vendee commenced this action for specific performance and for rents and profits. The defendant answered that the contract was procured by false representations and that it was executed in violation of the terms of the divorce decree. The reply pleaded former adjudication of the subject of false representations. The court made elaborate findings of fact and stated conclusions of law favorable to the plaintiff. Judgment was rendered against the defendant for rents and profits. The plaintiff was required to deposit the portion of the purchase price due the defendant, less the sum allowed for rents and profits, with the

clerk of the court, to be paid to the defendant on execution and delivery of her warranty deed. The sums which the plaintiff agreed to pay to the children were made a lien on the land. The defendant appeals.

In October, 1909, the defendant commenced an action in the district court of Wabaunsee county to cancel the contract on the ground that it was induced by false and fraudulent repre-. sentations concerning the value of the land made by the vendee and relied on by the vendor. The cause of action stated in the petition in that case was identical with the ground of defense stated in the answer in this case. In this case the court found that the issue was tried and determined against the defendant in the former suit on substantially the same evidence as that produced in this case. That should have ended the defense of fraud. The court, however, found with great care all the facts relating to the alleged fraud, and then specifically found as an ultimate fact that the plaintiff did not make fraudulent representations to the defendant in the matter of the purchase of the land in controversy. The defendant argues that the latter finding was a conclusion of law and desires this court to canvass the evidentiary findings and to conclude from them that the defendant was defrauded. The district court knew perfectly well what it was doing, and when finding with respect to the issues of fact determined this one and determined it against the defendant.

The defendant argues that the former adjudication extended no further than that sufficient cause for cancellation was not established, that sometimes specific performance will not be decreed although cancellation would not be ordered on the same evidence, and consequently that the charge of fraud based on the same facts as before was open to investigation in this suit. The premises may be conceded, but the conclusion does not follow. The case of *Shoop v. Burnside,* 78 Kan. 871, 98 Pac. 202, is cited. In that case Burnside employed the granddaughter of a woman eighty years old and wholly ignorant of a sudden rise in the value of her land to induce her to consent to a sale of the land to him at about one-half its value. It was held that specific performance should be denied, although the

vendee had not been guilty of actual fraud. The syllabus reads:

"Specific performance is not a matter of right but of equity, and rests in the sound legal discretion of the court. Before the relief will be granted the contract must appear to have been entered into with fairness and without any undue advantage or imposition, and the facts and circumstances must be such as appeal to the conscience of the court and compel its discretion." (¶ 1.)

In the opinion it was said:

"Although the proof might come far short of a showing sufficient to authorize the court to grant a rescission or cancellation of a contract, still on the same proof equity will often refuse to compel performance. For instance, a court of equity will not decree a rescission of a contract except for fraud or mistake. Inadequacy, improvidence, surprise and hardship are not sufficient, yet the presence of these, amounting to unfairness, even without fraud or mistake, will prevent a court of equity from ordering performance. While inadequacy of price is not sufficient of itself to avoid a decree for performance, it is a circumstance which will be taken into consideration with all the facts in determining whether a court of equity is called upon to afford relief." (p. 876.)

Suppose, however, an attempt had been made to inject into the controversy some alleged fact which had been adjudicated not to exist in a previous action for cancellation. For example, suppose inadequacy of price had in fact been one of the former issues necessary for determination and it had been adjudicated that the price was fully equal to the value of the land. Suppose mental capacity of the vendor to contract had been in issue and had been adjudicated. The public policy which is the basis of the doctrine of *res judicata* would have forbidden the relitigation of those issues. So here, fraudulent representations of the vendee to the vendor concerning material facts, whereby the vendor was induced to contract, were excluded from the facts and circumstances which the court was called upon to weigh in determining whether or not specific performance should be decreed. That was the sole issue in the former action, and, not as in a specific-performance case, the granting or the refusing of the relief sought depended on whether or not that issue was sustained. Having successfully met the issue once, the plaintiff was not required to meet it again.

With the issue of fraud disposed of there was little left of the defense. The price paid was $90 per acre and it is said

the price was grossly inadequate. An attempt was made at the trial in 1914 to establish the fair value of the land in February, 1909. A gradual advance in land values had been continually going on and witnesses differed in their estimates as much as $45 per acre. From all the evidence the court was unable to do more than fix a range of value of from $100 to $105 per acre. The defendant was a capable and experienced business woman who for some years had been operating successfully in city real estate in Topeka. The land consisted of a tract of seventy-six acres and was situated thirty miles away from the scene of the defendant's business operations. She had trouble with her tenants and was unable to secure from them proper returns. She knew the physical condition of the property, the improvements upon it, and its productiveness, and she was not prevented by the plaintiff or any one else from ascertaining its true value. She herself initiated the negotiations which led to the making of the contract. While negotiations were pending, and in December, 1908, she received a tax receipt which disclosed an assessed valuation of the land of $87.50 per acre. After that she held it at her own price of $7000, refused the plaintiff's offers of $80 and then $85 per acre, and finally accepted his offer of $90 per acre, or $6840, to which $125 as interest was afterwards added. Interest on the contract price at five per cent, the rate which the plaintiff agreed to pay, would produce an income greater than the net income the defendant was receiving from the land when she sold it.

In actions for specific performance the term "adequate consideration" does not mean the full equivalent of value. It means a consideration which is not so greatly disproportionate to value as to offend against the fair dealing which should characterize business transactions. Measured by that standard the plaintiff paid an adequate consideration for the land. Besides, this, something more than inadequacy of price is necessary before specific performance will be refused.

It is possible the defendant may now regret that she agreed to divide the consideration to be received for the land with her children. If so such stress of mind affords no basis for relief from the obligation of a contract.

The fact that the value of the land has greatly increased

with the general rise in land values since the contract was made affords no ground for denying specific performance. The plaintiff is entitled to the fruits of his bargain precisely as the defendant would have been entitled to the fruits of her bargain if land values had fallen. (*Niquette v. Green,* 81 Kan. 569, 106 Pac. 270.)

So far as the interest of the children in this controversy is concerned specific performance is distinctly beneficial to them. In December, 1909, the children, ostensibly, and by a next friend, moved in the district court of Riley county, the court which granted the divorce, for a cancellation of the contract on the ground that their means of support was jeopardized. The court undertook to cancel the contract, but it was held on appeal that while the interests of the children might be protected by the divorce court it had no jurisdiction to annul the contract. (*Greenwood v. Greenwood,* 85 Kan. 303, 116 Pac. 828.) The proceeding was afterwards abandoned. If its object had been attained the children would now be poorer in the sum of $1380.56.

The circumstances that the grounds of the divorce were extreme cruelty on the part of the plaintiff, that except for Christmas and holiday presents to the children of not more than $50 per year the plaintiff permitted the burden of supporting them to rest where the court had placed it until about the time the children entered college, and that the defendant and one of the children had typhoid fever at the same time and the plaintiff did not contribute to their hospital expenses, are mere stage properties employed to give scenic effect to the defendant's presentation of her case. They have nothing whatever to do with the merits of the book.

There is nothing else worthy of notice in the findings of fact to sustain the defendant's position that the court abused its judicial discretion, enforced an iniquitous contract, and thereby produced a result "abhorrent to the dullest sense of justice and contrary to law and equity." This court is of the opinion the district court did right.

There remains to be considered the defense that the contract was void because it violated the terms of a trust. As this court observed in the case of *Greenwood v. Greenwood,* supra, the divorce decree was very indefinite respecting the

interests the children were to have in the land. The nature and quantity of their interests were not defined, and the manner in which the trust was to be performed was not described. These are necessary elements in the declaration of a trust, and when the language is so vague, general or equivocal that they are left in uncertainty the trust fails. (3 Pomeroy's Equity Jurisprudence, 3d ed., § 1009; *Simpson v. Simpson*, 80 Cal. 237, 22 Pac. 167.)

The divorce decree charged the defendant with the duty of maintaining and educating the children. In order that the defendant might have means with which to discharge that duty the court gave her the land in controversy. It was supposed the land would be a source of income, and the purpose was that such income should be devoted so far as might be necessary to the support of the children during their minority. That was the full extent of their interest. This court so interpreted the decree when the children were here contending for their rights, and is now satisfied that the interpretation was as favorable to the children as was permissible. If this were not the case the court would hesitate to change the interpretation now, increase the interest which the children formerly had, but which has expired, and thereby enable the defendant to defeat the interest they now have in her contract with the plaintiff. The only limitation on the defendant's proprietorship was that the land should form a source of income to be devoted to the support of the children so far as might be necessary until the younger child became of age. With the occurrence of that event on October 17, 1913, the limitation was to cease, and did cease. Manifestly here was an estate in land concerning which the defendant was at perfect liberty to contract. She could sell or could give away her personal interest according to her own will. Besides this, she could bind herself by a contract concerning the entire estate without violating any rule of law or morals. She could even contract to give immediate possession to a purchaser, depending, perhaps, on securing approval of a sale whereby the land might be converted into a fund which would produce an income during the minority of the children and which would finally be shared with them. Should she fail in securing such a substitution the purchaser might not be able to secure

or hold possession.  The land might still stand as a source of income for the support of the children during minority, but it is elementary law that the contract would nevertheless be a valid contract between the parties.  The purchaser could compel a conveyance of all the interest the vendor possessed, and could recover by way of damages the value of the use of the land for the time he was deprived of the possession contracted for.  That is this case.

It so happens that the plaintiff was not entitled to a deed until the younger child attained her majority and the defendant's ownership became absolute.  The defendant has kept the plaintiff out of possession, and it is not now material what courses might have been pursued for the protection of the children under other circumstances.  The defendant has no interest in the portion of the purchase money belonging to her adult children and can not question the character of the order of the court made for their benefit.

The judgment of the district court is affirmed.