No. 19,700.

ASHFORD W. GREENWOOD, *Appellee*, v. ANNIE M. GREENWOOD, *Appellant*.

OPINION DENYING A REHEARING.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion denying a rehearing filed March 11, 1916. (For former opinion of affirmance see 96 Kan. 591, 152 Pac. 657.)

*W. R. Hazen, H. W. Page, Bennett R. Wheeler,* and *John F. Switzer,* all of Topeka, for the appellant.

*Z. T. Hazen,* and *R. H. Gaw,* both of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: A petition for rehearing has been filed which has been supplmented quite copiously. Some of the matters urged may be given such attention as they deserve.

Greenwood v. Greenwood.

Much stress is laid on the fact that the trial court *made a finding* that the district court of Wabaunsee county determined the issue of fraud no further than that the contract should not be set aside, the finding being that the issue "was not determined in any other respect.

The fact that the trial court made the quoted finding was of no consequence whatever. The district court made the following findings, which were briefly but accurately summarized in the opinion:

"11. The issues of fact raised by the pleadings in said action in Wabaunsee county, including the question of fraud charged in the petition, were tried and determined by said district court of Wabaunsee county, Kansas. Substantially the same evidence was introduced in support of the charge of fraud in this action as was introduced in the action in Wabaunsee county.

"22a. . . . This alleged misrepresentation as to the value of the property was expressly pleaded by the defendant in her petition in the suit in Wabaunsee county as a ground for the rescission of the contract and such allegation was denied by the plaintiff in his answer."

The district court also made this finding:

"10. . . . Afterwards and on February 7th, 1911, the case was decided by the court in favor of the defendant in that action, plaintiff in this, and against plaintiff in that action. Copy of the journal entry of said judgment is attached to plaintiff's reply herein and is hereby referred to and made a part hereof."

With the issues, the evidence and the judgment found, any statement of the trial court as to the extent of the former adjudication was pure supererogation. The judgment spoke for itself. This court could interpret it just as well as the trial court, and the trial court could not by any finding it might make add to or limit the scope of the judgment. The issue before the Wabaunsee district court was whether or not the contract should be set aside for fraud. It would have been a most remarkable circumstance if the Wabaunsee district court had undertaken to determine this issue in any other or further respect than that the contract should not be set aside, and if it had done so the result would have been without effect as *res judicata* because beyond the issue under investigation. Without the judgment before it and without the finding of the trial court before it this court would have been obliged to assume that the Wabaunsee district court determined the issue before it no further than that the contract should not be set

aside.  Consequently the fact that the trial court *made a find-ing* of that which was perfectly obvious and could not be otherwise was not deemed of sufficient importance to be given space in the statement of facts contained in the opinion.

The fact that the judgment of the Wabaunsee district court was limited to the issue before it, determined that issue to the extent that the contract should not be canceled, and determined nothing more, was of consequence.  That fact furnished the foundation for the defendant's contention that the conduct investigated in the former cancellation suit was open to investigation again in this specific-performance suit.  The case was argued orally.  The point indicated was made on one side and answered on the other.  The written briefs did the same thing.  From these sources the court was able to comprehend the question presented for decision, which was not abstruse, and the court stated it in the opinion with sufficient definiteness for all purposes of the decision, as follows:

"The defendant argues *that the former adjudication extended no further than that sufficient cause for cancellation was not established,* that sometimes specific performance will not be decreed although cancellation would not be ordered on the same evidence, *and consequently* that the charge of fraud based on the same facts as before was open to investigation in this suit.  *The premises may be conceded,* but the conclusion does not follow."  (*Greenwood v. Greenwood,* 96 Kan. 591, 593, 152 Pac. 657.)

Then followed more than a page of matter in which the court tendered some reasons for not agreeing with the defendant's contention.  The conclusion was stated in the first paragraph of the syllabus.  The treatment of this subject in the opinion begins with the major premise, conceded to be true, that the *former adjudication extended no further than that sufficient cause for cancellation was not established.*  All that followed related to the effect of that kind of an adjudication upon the rights of the parties in this suit.  That is what the court had in mind; it had nothing different in mind, and statements by one of defendant's counsel that the opinion mistates the record, that the opinion is based upon facts not shown by the record and facts contrary to those shown by the record, that the appellant has had no consideration of the real question decided by the trial court, and that she has been prevented from having the consideration of the court upon the merits of her appeal, not

only have no foundation in fact but are contradicted by the plain language of the opinion itself.

The case of *Shoop v. Burnside,* 78 Kan. 871, 98 Pac. 202, is referred to again and again. That case was not overlooked. Quotations from both the syllabus and the opinion appear in the opinion in this case. This court understands the doctrine of *Shoop v. Burnside,* having decided the case and promulgated the opinion. The court declined and still declines to extend the doctrine of that case to permit the charge of fraudulent representations, decided to be insufficient to warrant setting aside a contract, to be re-pleaded and re-litigated in an action between the same parties for specific performance of the same contract. To the mind of the court the decision in *Shoop v. Burnside* and the decision in this case may stand side by side without impinging upon one another. If there be any conflict, the private interest which alone is involved in specific performance must yield to the public policy which lies at the foundation of *res judicata.*

The application of the doctrine of *res judicata* is sought to be avoided by a discussion of the difference between facts and issues. The petition in the cancellation suit made certain allegations of fact. The denial of those allegations of fact made an issue of fact and raised the question of the existence of fraud. That issue, including the question of fraud (Finding No. 11, quoted above), was determined against the plaintiff in that suit. What the doctrine of *res judicata* prevents is the investigation of the same issue of fact made in the same way and raising the same question of fraud in another suit between the same parties relating to the same subject matter, the form of the second action being immaterial. A suit was commenced to rescind a contract on the ground of fraud. Relief was denied. In a subsequent suit for damages resulting from the same fraud the former adjudication was pleaded in bar. The court said:

"Where a pleading states the facts as were set out in a former pleading in an action between the same real parties in interest, their representatives or privies, suing or being sued in the same quality or character—which facts were either admitted or traversed in the former action—and it appears that there was a final adjudication of the matters so in issue by a court of competent jurisdiction, then the question of the truth or falsity of the matters so in issue, as between the same parties,

their representatives or privies, is considered as forever settled by the adjudication upon them. And by the term, 'matters in issue,' we think must be included not only the object of the suit or the particular right or defense sought to be recovered or established, but all the facts material to the issue from which such object or remedy, cause of action or defense, was deduced." (*Gutheil v. Goodrich*, 160 Ind. 92, 95, 66 N. E. 446.)

In the Wabaunsee county case *one general fact* was involved, the existence of fraud at the inception of the contract. (See *Barber v. Kendall*, 158 N. Y. 401, 404, 53 N. E. 1, action to rescind after judgment for specific performance.) Whether the vendee said this or that, what of his statements, if any, were untrue or how far they were untrue, and to what extent the then plaintiff relied on them or was entitled to rely on them, were all matters going to the single fact, Was the contract the product of a motive improperly created in the present defendant's mind by fraud? Sometimes the making of statements, their falsity, reliance upon them, etc., are called elements or ingredients of fraud. Under a rule of pleading they must be set out, but when set out, collectively they state fraud, which is a fact, (Pomeroy, Specific Performance of Contracts, 2d ed., § 194), and whenever the cause of action is one for relief on the ground of fraud, and relief is denied by a judgment on the merits, the subject of fraud in the matter complained of is set at rest.

"So far as that cause is concerned, nothing remains upon which to base any litigation. So, also, a final judgment on the merits determining any issue of law or fact, after a contest over it, forever sets it at rest, and fixes it as a fact or as the law in any other litigation between the parties or their respective privies." (1 Van Fleet's Former Adjudication, § 1.)

The rule goes to the extent that the effect, and the *entire* effect, of the facts constituting fraud is adjudicated by a former judgment denying relief, and such facts can not be considered in a subsequent suit as a part of a different combination of facts. (*Clark v. Krause*, 17 D. C. 108.)

Leaving at one side the subject of *res judicata*, it would not be difficult to demonstrate that the findings of fact authorized a judgment for specific performance, but the court declines, as it did in the former opinion, to consume space with the analysis of the findings and the application of the rules of law which

would be necessary. Whether or not the district court in its conclusions of law gave weight to the former adjudication, the facts having been found, this court is able to apply the proper rules of law to them. With the subject of fraud eliminated little was left of the defense.

It is said that the third subdivision of the syllabus is that "inadequacy of consideration is not a defense to specific performance," that every lawyer knows mere inadequacy of consideration alone is not sufficient as a defense, and that the defendant has made no claim that it was. The syllabus does not make the statement attributed to it, and neither the syllabus nor the opinion attribute to counsel reliance upon mere inadequacy of consideration alone as a defense. One grievance of the defendant is that she did not get enough for her land. Since that was a material subject of the lawsuit, and since insufficiency of consideration may go to the extent of producing inequity, it was deemed proper to say something about it. The discussion inevitably led up to the question, What is adequate consideration? and a definition was adopted and stated in the syllabus. That this discussion was pertinent is shown by the documents filed in connection with the application for a rehearing. In one of them the subject of "inequity of the contract itself" is discussed, the sole point of the discussion being the profit to the plaintiff and the loss to the defendant resulting from the contract, ascertained by deducting the price paid from the value of the land. The figures presented show a value of from $7600 to $7980 while the price paid was from $760 to $1140 less. The court can not accept counsel's judgment, if such be his judgment, that this disparity, under the circumstances, fraud being eliminated, ought to prevent specific performance. The court is inclined to be guided by the authorities, which are abundant. Two of them, one English and the other American, will indicate the trend. In *Abbott v. Sworder,* 4 De Gex & Smale, 448, a contract to purchase land worth only 3500 pounds at a price of 5000 pounds was specifically enforced against the purchaser. In *Nickerson v. Bridges,* 216 Mass. 416, 103 N. E. 939, decided in January, 1914, a contract to pay $16,000 for property which the evidence indicated was worth several thousand dollars more than that sum was specifically

enforced against the seller. Part of the opinion reads much as if the court were discussing the findings of fact in this case.

"Where the party to be charged has been overreached, or great hardship may be entailed, the court will exercise its discretion to prevent oppression and injustice, and this form of relief [specific performance] will be refused, although the bill, if the plaintiff desires, may be retained for the assessment of damages, rather than to remit him to his remedy at law. *Seton v. Slade*, 2 White & Tudor's Lead. Cas. in Eq. (4th Am. ed.) 513, 526. *American Stay Co. v. Delaney*, 211 Mass. 229. The evidence as to the market value of the land was conflicting. Undoubtedly the plaintiff sought to obtain it as cheaply as possible, and he and his brokers were better acquainted with its value than the vendors. But the judge has found that one of the defendants, who acted for herself and her sister the co-defendant, while advanced in years, was a business woman of experience, familiar with the location and the valuation made by the assessors of taxes. The bargain, moreover, was not entered into precipitately under pressure of the plaintiff's presence and urgency, nor were the defendants ignorant of their legal rights. During a period of five days, as he further finds, they could have made inquiries and obtained information and advice, as to whether the price offered ought to be accepted. It can not be said under these conditions, that the difference was so grossly inadequate as to lead to the inference of constructive fraud by the plaintiff, or of mistake in the making of the contract." (p. 421.)

The subject of what benefit the children received from the original divorce decree is reargued at length, the contention being that the decree created a trust. The opinion said, as the court had said before, that the language of the decree was very indefinite. The opinion stated the general rule with reference to definiteness in the declaration of a trust, given by a writer who has enriched American jurisprudence by a number of text books as brilliant as they are profound. The statement was taken from section 1009 of 3 Pomeroy's Equity Jurisprudence, 3d ed., where it was said:

"The declaration of trust, whether written or oral, must be reasonably certain in its material terms; and this requisite of certainty includes the subject-matter or property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of interests which they are to have, and the manner in which the trust is to be performed. If the language is so vague, general, or equivocal that any of these necessary elements of the trust is left in real uncertainty, then the trust must fail."

The opinion then cited a case decided by a supreme court of high repute in which the general rule was applied to a divorce

decree which, it was argued, undertook to create a trust in
land for the benefit of children, but which failed to do so be-
cause of indefiniteness.   The syllabus of that case reads as
follows:

"When, upon a decree of divorce in favor of the wife, for extreme
cruelty and habitual drunkenness of the husband, the homestead property
is awarded to the wife, and the decree declares that the property so
awarded to her is to 'be held in trust for her support, and for that of
the children of the parties,' no definite or certain trust is created, but
an absolute and unlimited estate in the homestead property is transfered
to the wife."   (Simpson v. Simpson, 80 Cal. 237, 22 Pac. 167.)

In the opinion it was said:

"As to the inference of a trust from the use of the words 'for her
support and for that of the children,' and like words and phrases, Mr.
Pomeroy says (section 1012): 'No definite rule can be laid down; each
case must stand upon its own circumstances.   If the language is sufficient
for the intention to be clearly inferred, the trust will be enforced; other-
wise the donee will take an absolute estate, and the provisions concerning
maintenance will be regarded as mere motives for the gift and recom-
mendations addressed to his discretion.'

"The words in the divorce decree from which it is claimed that a trust
may be inferred immediately follow the paragraph giving the wife the
custody of seven minor children, and thereby casting upon her the duty of
supporting and educating them, regardless of any aid which the court
might allow her from the property of her husband.   Under these cir-
cumstances it seems not to have been inappropriate for the court to ex-
press, as a reason or motive for giving her the homestead, that it was
intended for the support of herself and children, for which, by the decree,
she had been made solely responsible."   (p. 241.)

There has been some undiscriminating thinking and careless
writing about the subject of trusts by some of the courts of
this country.   Cases may be found in which the simple use of
the words "in trust for" a person or persons described have
been held to create a trust for what seemed to the court to be a
good thing for the person designated.   In such cases the gen-
eral principles are often stated correctly, but it is not perceived
that in applying the principles the court creates out of whole
cloth the uses and purposes which are attributed to the trust
instrument.   The decided cases being as multitudinous as they
are multifarious, no review of them will be attempted.   In the
case of Tenney v. Simpson, 37 Kan. 579, 15 Pac. 512, it was said
that no particular form of expression is required to create an
express trust but that the declaration of trust will be valid

if the writing or writings "clearly point out the nature and objects of the trust." (p. 588.) The divorce decree did not specify any estate or title or interest whatever in the land in controversy which the children were to possess or enjoy, did not specify any use to be made of it for their benefit, and did not specify any act or duty with reference to it which the trustee was to perform for their benefit. Essential elements of a trust were lacking, and the award of the land to the mother for her alimony and as her separate estate vested in her the entire title and estate, if Pomeroy and the supreme court of California are competent witnesses to the law, and if the rule indicated in *Tenney v. Simpson*, supra, is a trustworthy guide.

Counsel for the defendant undertakes to enlighten the court by means of a parallel. The declaration of trust in the divorce decree, and the declaration of trust in the divorce decree involved in the case of *Arnold v. Arnold*, 83 Kan. 539, 112 Pac. 163, are placed side by side. The question is asked, Which is the more definite and certain? and the challenge is made to point out what element is omitted in one which makes the trust void, which is found in the other and makes it valid. Here are the two decrees.

" 'And it is further ordered and decreed that the said plaintiff shall have, and there is hereby set apart to her as her separate estate, as and for her alimony in said action the following-described real estate [describing it], to be held by the said Annie Greenwood, in trust for Grace and Helen Greenwood until the said Helen Greenwood shall attain her majority, and at the expiration of said time or upon the death of both of said children before said time the title to said property shall vest in the said Annie Greenwood absolutely and in fee.' " (*Greenwood v. Greenwood*, 96 Kan. 591, 592, 152 Pac. 657.)

" 'That the plaintiff be and is hereby divorced from the said defendant and that she do have the complete, absolute and full control of said minor children during their minority, and that the legal title to said above-described homestead real estate be vested in the plaintiff in trust for and to the use and benefit of said children and any that may be hereafter born unto the plaintiff and defendant, or the survivors of them, until the youngest of said children of the survivor shall come to the age of maturity, to be held and used as the home of the plaintiff and the said children until said children or the youngest survivor of them shall come to his majority; and it is further ordered that said plaintiff do have all of the aforesaid personal property, including all growing crops on said farm, and that plaintiff do have the control of the contract of purchase of said land, and is authorized to perfect and complete the said purchase.' " (*Arnold v. Arnold*, 83 Kan. 539, 540, 112 Pac. 163.)

The difference between the two decrees is that in the Arnold case the use is clearly stated in express words in the part of the declaration of trust in which such limitation should appear, —"*to be held and used as the home of the plaintiff and the said children.*" This indispensable declaration is pointed out in the opinion in the Arnold case as follows:

"The language of the decree is clear and leaves no room for construction; it vests the legal title in her as trustee for the use and benefit of the children until the youngest shall come to the age of maturity, to be used as a home for her and her children until that time. The trust, the use and the limitation are clearly stated." (p. 543.)

The words of the decree in this case, "in trust for Grace and Helen Greenwood" do nothing whatever but designate the beneficiaries, and there is just as much reason for reading into the decree the limitation expressed in the Arnold decree as any other. The district court found that the defendant leased the land in her own name and kept no account with her children as to the amount of money she received as rental, or how it was disbursed, but treated the income from the land as her own funds. She was well within her rights because the decree gave the children no property in a penny of the income from the land any more than it gave them title to the land itself, and charged the defendant with no duty to account to them for her management of the farm or her use of the proceeds derived from it. Because the decree is utterly barren of any description of the nature and purpose of the trust, it fails to meet the requirement of a declaration of trust.

It is asked why, if the court in the original opinion and in the opinion in *Greenwood v. Greenwood,* 85 Kan. 303, 116 Pac. 828, was able to define the nature and quantity of the children's interest and the manner in which the trust was to be performed, the trust is now held void for uncertainty. The court has not at any time been able to define the nature of any trust created by the divorce decree or the manner in which any trust created by that decree might be performed. In the case just cited the opinion summarized the terms of the decree and then said:

"We assume that the effect of the original decree was to *charge the income* from the land with the support and maintenance of the children, if necessary for that purpose." (p. 307.)

The word "trust" does not occur in that opinion except in stating the terms of the decree. In the original opinion in the present case the court said:

"The divorce decree charged the defendant with the duty of maintaining and educating the children. In order that the defendant might have means with which to discharge that duty the court gave her the land in controversy. It was supposed the land would be a source of income, and the purpose was that such income should be devoted so far as might be necessary to the support of the children during their minority. That was the full extent of their interest." (*Greenwood v. Greenwood,* 96 Kan. 591, 597, 152 Pac. 657.)

There is not a word here about any trust, and in the paragraph just preceding the one quoted the court had pointed out that essential elements of a trust were wanting. If the defendant had complied with her contract and had surrendered possession of the land, the children would have had no standing in court as beneficiaries of a trust to call the defendant to account as their trustee.

It is said that the present decision conflicts with the decision rendered in the case of *Greenwood v. Greenwood,* 85 Kan. 303, 116 Pac. 828. The court not only upholds that decision as *stare decisis,* but fully approves it. The decision was that the divorce court had no power to cancel or set aside the contract between the plaintiff and the defendant "so far as such contract in no respect interfered with the rights of the children" (Syl.), but that the interest of the children might be protected. The divorce court had original and continuing power to make any reasonable order for the support of the children. Having made an order upon that subject, the parties to the decree could not take away that support, and any attempt to do so or to substitute some other kind of support would have no effect *on the rights of the children.* But the divorce court, neither at the time of the original decree nor at the time when the attempt to cancel the contract was made, had any power to lay its hand on a contract between the plaintiff and the defendant further than might be necessary to protect the children. With the validity and the binding quality of the contract *as between the plaintiff and. the defendant* the court had nothing whatever to do. It was concerned solely with the results of the contract on the rights and interests of the children, and had no concern whatever with the results of the contract on the rights and

interests of the contracting parties as between themselves. The divorce court conceived that the interests of the children extended so far as to require cancellation of the contract, and as a consequence the cancellation of the defendant's obligation to the plaintiff. This court reversed the judgment because it was not necessary, in order to protect the children, that the obligation of the plaintiff to the defendant should be destroyed. The contract embraced two subjects now of importance, conveyance of title and delivery of possession. Title was not to be conveyed until all relation of the children to the land was at an end and consequently they had no interest in that feature of the contract. Surrender of possession might cut off a source of income which might be material to their maintenance. They were interested in that subject, but they were interested no further than that possession should not be surrendered. Protection of their interest required no more than that the defendant keep the possession she had contracted to deliver. It did not require cancellation of the contract as between the plaintiff and the defendant or any impairment of the obligation of the defendant to the plaintiff which the contract created.

In the original opinion it was said that certain facts, which were summarized, were stage properties employed to give scenic effect to the defendant's presentation of her case and had nothing whatever to do with the merits of the book. One of the defendant's counsel feels aggrieved at the remark as a personal reflection upon him. Instead of meaning to reflect upon the counsel the court undertook to give the best turn it could to a serious matter with reference to which he stood on narrow ground. On the face of the brief his denunciation of the plaintiff and his denunciation of the decision of the trial court went dangerously near the limit of propriety. Printed briefs which become records of this court are not proper vehicles for invective against persons. The attorney for the plaintiff remonstrated against the intemperance of counsel's language. In a reply brief, counsel disclaimed any personal reflection upon the trial judge for making a decree resulting in "monstrous iniquity." The disclaimer is accepted, but it would have been better had it been extended to include an explanation of what was meant by characterizing the result of the decision as "abhorrent to the dullest sense of justice," and

what was meant by twice drawing the distinction between the decision rendered and the decision expected of the "just judge." The reply brief renewed the virulent personal attack on the plaintiff and stated that counsel had no apology to offer for it. The document passed beyond the bounds of legitimate argument to aspersion and revilement. Conceding something to zeal and to genuine emotion, the court passed the matter by as calcium light employed to bring into strong relief the merits of the controversy as counsel saw them. Counsel's statement that he believed the facts referred to in the original opinion to be relevant and material will be accepted, but the court disagrees with him and again states its opinion to be that they had nothing whatever to do with the merits of the case.

The foregoing covers the principal features of the application for a rehearing and for a reversal, and it is not deemed necessary to extend this opinion further.

The application for a rehearing is denied. The judgment of the district court is again affirmed, and the district court is directed to enter and carry into effect the mandate which has been forwarded to it.

WEST, J. (concurring specially) : Concurring in the result, I would add one suggestion.

Not only are we increasingly careful to refrain from impugning the motives of counsel but in the foregoing opinion an intended criticism merely of an argument, erroneously taken as a personal reflection, is correctly construed by the reference to the "Scenic" expression in the original opinion.

If a similar regard for the feelings of the court were manifested in all cases and at all times by counsel appearing here the felicity of the work and practice in this court would be augmented.