No. 38,974

A. W. TORLUEMKE and PAUL BOSCH, *Appellants,* v. PERRY C. ABERNATHEY and OLLIE M. ABERNATHEY, his wife; CORA M. SWEAT and S. L. SWEAT, her husband; NORA EDITH CARR and LOUIS A. CARR, her husband; LENA M. ABERNATHEY, a widow, and CHARLES S. ARTHUR, *Appellees.*

(258 P. 2d 282)

Opinion filed June 6, 1953.

*C. K. Sayler,* of Topeka, argued the cause, and *Richard C. Wells,* of Manhattan, and *L. M. Ascough* and *John A. Bausch,* both of Topeka, were with him on the briefs for the appellants.

*Charles S. Arthur,* of Manhattan, argued the cause, and *Charles D. Green,* of Manhattan, was with him on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: Plaintiffs brought this action to rescind and cancel a contract they had made with defendants for the purchase of certain real property and to recover the sum of $5,000 which they had paid thereon. The trial court sustained a demurrer to their evidence and rendered judgment for defendants. Plaintiffs have appealed.

The facts disclosed by the record may be summarized as follows: The defendants, Perry C. Abernathey, Cora M. Sweat and Nora Edith Carr, were the children, and Lena M. Abernathey the widow, and together were the surviving heirs at law of M. R. Abernathey, deceased, whose estate was in the process of administration. They were the owners of a described tract of about four acres of real property situated in Riley county not far from the Kansas river. Situated on the property was a large L shaped barn, one part being about 200 feet long and the other part 100 feet, which formerly had been used as a dairy. There was also a two-story stone house, which had been made over into apartments, and a very good small cottage occupied by the widow, Lena M. Abernathey. Plaintiffs were in the automobile business and desired this property for the purpose of storing automobiles and parts and for other purposes in connection with their business. On May 21, 1951, defendants and plaintiffs entered into a written agreement by which defendants agreed to sell and plaintiffs to buy the property for the sum of $9,500, to be paid $1,000 upon the execution of the contract, $4,000 on or before July 1, 1951, and the balance of $4,500 upon delivery of a deed, which it was agreed could not be delivered until after the estate of N. R. Abernathey was closed. It was agreed that the deed to the property should be executed at once and placed in escrow with Charles S. Arthur and that all payments should be made to him and that he should retain the money and the deed until the estate was closed and an abstract showing merchantable title delivered. They agreed that possession of the property would be given to the purchasers on July 1, 1951, with the provision that Lena M. Abernathey could continue to live in the cottage on the property, rent free, until September 1, 1951; that the first half of the taxes on the property for 1951 (based on the 1950 taxes) should be paid by the sellers and that the present insurance policy was to be cancelled. At the time the contract was executed the property was occupied by Stubblefield & Schoonover, Inc. as a tenant, from month to month, who was

engaged in the automobile business and using the property for the same purpose plaintiffs desired it. Under date of May 28, 1951, the plaintiffs and the defendants in this action signed and served upon the tenant a written notice to quit and vacate the property on or before July 1, 1951. The tenant obeyed that notice and vacated the property by July 1, 1951. Upon execution of the contract, May 21, 1951, the plaintiffs paid to the escrow agent $1,000; also, on July 1, 1951, they paid to the escrow agent $4,000, as provided in the contract; also, prior to that time, defendants had executed to plaintiffs a general warranty deed for the property, which also was placed with the escrow agent. On July 1, 1951, plaintiffs were entitled to take possession of the property, the former tenants had vacated and plaintiffs actually took possession of it, or were preparing to do so. On July 11 the Kansas river flooded so that the property in question was covered by "several feet" of water. The barn on the property was seriously damaged and considerable sand was deposited, some in the buildings and some upon the land.

Plaintiffs predicated their right to rescind the contract of purchase and to recover the money paid thereon upon the view that the damages to the property should be sustained by defendants. The trial court held to the contrary, and we concur.

In *Bank v. Grisham,* 105 Kan. 460, 185 Pac. 54, cited in 33 C. J. S. 44 in support of the text, where the parties had agreed upon an exchange of real property and the buildings on one of the properties burned after the contract was executed, it was held:

"When a lawful and binding contract for the exchange of properties consisting of real estate has been executed, the fact that a building on one of the properties is thereafter burned does not furnish an excuse to rescind the contract, nor render it impossible to grant specific performance. The loss in such case falls on the vendee."

And, generally, where parties have executed an agreement for the purchase and sale of real property the fact that the value of the land has changed before the time of the closing of the contract is not a sufficient reason for allowing rescission or refusing specific performance. (See, *Niquette v. Green,* 81 Kan. 569, 106 Pac. 270, and *Greenwood v. Greenwood,* 96 Kan. 591, 152 Pac. 657; 97 Kan. 380, 155 Pac. 807.) These cases are cited in 58 C. J. 896, together with many other cases in support of the text.

It will be noted that the above Kansas cases make the execution of the contract the time to be considered. Mr. Williston in his work on Contracts, Revised Edition, speaks of this as the "English rule" and discusses what some of the courts have referred to as

the "equitable rule" through several sections, beginning with section 935. These are too lengthy to quote, but we do note that in section 939 the author concludes "Intent to transfer ownership should control the question," and section 940 discusses the paragraph headed the "Risk should pass to the purchaser on transfer of possession." We quote the pertinent portion of this as follows:

"The intention of the parties is the factor in any proper decision. Parties do not frequently make express provisions as to risk, but they do indicate whether they intend a present transfer of the rights of ownership or a future transfer, and there should be no doubt that they expect all the incidents of ownership to pass from the seller to the buyer at that time. That time will frequently not be when the legal title is transferred. If, as frequently happens, a purchaser is given immediate possession under his contract, with the right to use the property as his own to the same extent as is customary with a mortgagor, the title is retained merely as security for payment of the price. It is a short way and in many states a common way of accomplishing the same end that would be achieved by conveying to the purchaser and taking back a mortgage. When by the contract the beneficial incidents of ownership are to pass is the time which the parties must regard as the moment of transfer. This is the time when the purchaser is held to become the 'owner,' under alienation clauses in insurance policies, and no little authority supports the conclusion that then, and not before, the risk passes to the vendee."

Tested by this rule the loss in this case should fall on the vendees. Many elements of the contract, previously noted, fairly provided that possession of the property should be given to the vendees on July 1, 1951. The former tenant had been notified to quit by that date, and did so. Taxes were adjusted as of that date. The right to use the property was given as of that date except that the widow might use the residence, rent free, to September 1st. An additional $4,000 of the purchase price was to be paid at that time, and the insurance on the property was canceled.

Moreover, this was not a suit to adjust the liabilities of the parties. Plaintiffs' bold attack was to rescind. There is no reason why the rules stated in the cases above cited should not be applied.

It was stipulated at the trial that the final settlement of the estate of M. R. Abernathey was had on January 29, 1952, on which date the real estate of the decedent was assigned to his widow and children, who were defendants in this action. It is clear from the evidence offered by plaintiffs that there was nothing which defendants did which prevented them from taking possession of this property on July 1, 1951.

We find no error in the record. The judgment of the trial court is affirmed.