No. 47,983

MAURICE E. HOCHARD and JOAN E. HOCHARD, *Appellants*, v. HOWARD DEITER and GRACE DEITER, *Appellees*.

(549 P. 2d 970)

Opinion filed May 8, 1976.

*James M. Macnish, Jr.*, of Topeka, argued the cause, and *C. Bruce Works*, also of Topeka, was with him on the brief for the appellants.

*William Hergenreter*, of Topeka, argued the cause, and *Richard P. Royer*, of Pratt, was with him on the brief for the appellees.

The opinion of the court was delivered by

OWSLEY, J.: The question in this case is whether the trial court erred in refusing to grant specific performance of a contract for the sale of real estate.

On October 27, 1970, plaintiffs Maurice E. and Joan E. Hochard entered into a written contract of sale whereby they agreed to purchase, and defendants Howard and Grace Deiter agreed to sell, a 120-acre tract located in Wabaunsee County, Kansas. The provisions of the contract called for a sale price of $11,200, of which $2,000 was to be placed in escrow immediately, $3,000 was to be paid when the title was approved as merchantable, and the bal-

ance was to be paid in annual installments. The contract provided that possession was to be given to the purchasers as soon as the abstract of title was approved and the $3,000 paid to the sellers.

In accordance with the contract terms the Hochards immediately placed the $2,000 in escrow. Shortly thereafter, the Deiters delivered their abstract of title to the Hochards' attorney for examination. Six or eight months later, in the spring of 1971, the Hochards' attorney contacted the Deiters and requested that the abstract be brought up to date. The Deiters took the abstract to an abstracter who informed them that due to an error in the legal description of the property they did not have legal title to twenty acres of the 120-acre tract. In the meantime, the Hochards had taken possession of the land and were farming a small section with the Deiters' permission. The Deiters contacted their attorney and requested him to correct the defect in the title. Also, in the spring of 1971 the Deiters demanded that the Hochards pay to them the $2,000 in escrow, plus the additional $3,000, in return for which they could retain possession of the property. The Hochards refused to pay the money to the Deiters without first receiving merchantable title as provided in the contract. Hochard signed a statement to the effect that he no longer had a right to possession of the property in order to enable the Deiters to receive A. S. C. S. payments. The Deiters have had possession of the land since 1971.

The Deiters' attorney failed to make any progress in perfecting title to the property. Apparently the previous owners refused to respond to requests for a quitclaim deed. The Deiters refused to convey the 120 acres, deducting three or four hundred dollars for a quiet title action. The Hochards last contacted them in the spring of 1972 and it was in the summer of 1972 that they first suspected the Deiters would not perform the contract. The Deiters made additional attempts to cure the defective title in 1973, but in the spring of that year they gave up on obtaining merchantable title and built a fence and two ponds on the land at a total cost of between $2,500 and $2,800. The property was mortgaged by the Deiters to the Federal Land Bank sometime in 1973.

On May 8, 1973, the Hochards' attorney wrote a letter to the Deiters demanding performance of the contract. Receiving no response, they filed suit on January 16, 1974, for specific performance of the contract or in the alternative for damages. The Deiters counterclaimed for rescission of the contract on the ground

the defect in title rendered it unmerchantable. Trial before the court resulted in a judgment for the Deiters on the Hochards' petition for specific performance, the trial court concluding it would not be equitable to specifically enforce the contract since the Hochards had violated its terms and were guilty of laches. The $2,000 in escrow was ordered to be returned to them and court costs were taxed to the Deiters.

The effect of the trial court's decision was to deny an award of specific performance and order rescission of the contract. In their statement of points the Hochards contend the trial court erred by rescinding the contract where the nonperformance was occasioned by the Deiters' failure to act. We approach the problem mindful that if the Hochards were entitled to specific enforcement it would not be proper for the trial court to order rescission of the contract since the equitable remedy of specific performance is the "antithesis" of a decree for rescission. (See, *Russell v. Ferrell,* 181 Kan. 259, 311 P. 2d 347.)

Whether equity will decree the specific performance of a contract rests in the sound judicial discretion of the court and it always depends upon the facts and circumstances of the particular case. (*Wilcox v. Wyandotte World-Wide, Inc.,* 208 Kan. 563, 493 P. 2d 251; *Shepard v. Dick,* 203 Kan. 164, 453 P. 2d 134; *Wetzel v. Hattrup,* 174 Kan. 244, 255 P. 2d 637; *Malir v. Maixner,* 174 Kan. 26, 254 P. 2d 282.) Where the trial court abuses its discretion and arbitrarily refuses to order specific performance of a contract in a proper case it is within the power of this court to reverse the judgment of the trial court and order that the contract be specifically enforced, as stated in 71 Am. Jur. 2d, Specific Performance, § 7, p. 19:

"The remedy of specific performance is governed by the same general rules which control the administration of other equitable remedies. In particular, therefore, when the party seeking specific performance of a contract establishes the existence of a valid binding contract, which is definite and certain in its terms and contains the requisite of mutuality of obligation, and is one which is free from unfairness, fraud, or overreaching, and enforceable without injustice upon the party against whom enforcement is sought, the court will, when the remedy at law for the breach of such contract is inadequate and the enforcement of specific performance will not be inequitable, oppressive, or unconscionable, or result in undue hardship, grant a decree of specific performance as a matter of course or right. . . ."

By the terms of the written contract the Deiters agreed to sell and the Hochards agreed to buy. The sale was an arms-length

transaction between parties of equal ability to negotiate. The sale was not consummated because the Deiters failed to provide the Hochards with merchantable title. The trial court found the Hochards had violated the contract and specific performance should not be decreed. The undisputed evidence in the record discloses that the Hochards performed every act required by the contract except the payment of taxes for 1971 and subsequent years, and the payment of the annual installments. We cannot charge the Hochards with breach of contract on these grounds. We do not construe the contract to create an obligation to pay the taxes and the annual installments until there was a tender of merchantable title. At all times the Hochards indicated they were ready, willing and able to complete the sale upon such tender.

The trial court's memorandum opinion refers to the doctrine of laches as a basis for denying specific performance. Viewed in its context, we are convinced the court used the word "laches" to refer to one of the factors to be considered in determining whether specific performance would be equitable rather than as an absolute bar to the cause of action.

The trial court cited the case of *Fowler v. Marshall*, 29 Kan. 665, for the proposition that upon the breach of a contract for the sale of real estate, it is not a matter of course for the court to enter a decree of specific performance, and the lapse of time in which a party fails to insist upon his rights will sometimes prove fatal. We recognize, however, that delay alone will not bar specific performance unless some prejudice resulted therefrom to the rights and interests of the adverse party. (*Darby v. Keeran,* 211 Kan. 133, 505 P. 2d 710; *Shell v. Strong,* 151 F. 2d 909 [10th Cir. 1945]; *Golden v. Claudel,* 85 Kan. 465, 118 Pac. 77; 71 Am. Jur. 2d, Specific Performance, § 96, p. 130.)

Although the undisputed facts disclose that the contract was entered into on October 27, 1970, and suit was not brought until February 6, 1974, there were several factors contributing to the delay. After being told of the defect in the title to the twenty acres, the Deiters represented to the Hochards that they would take appropriate steps to cure the defect. In fact, Deiter told Hochard it might take two or three years to perfect the title, but he would see that it was done before the end of the contract in 1976. The Deiters never advised the Hochards they were not going to perform the contract. Even though the Hochards first sus-

pected in the summer of 1972 that the Deiters would not perform, they never indicated to the Deiters that they were abandoning the contract. To the contrary, in May, 1973, the Hochards wrote the Deiters, demanding performance. Following receipt of this letter, the Deiters mortgaged the property to the Federal Land Bank.

Time is not ordinarily regarded as of the essence of a contract unless it is so stipulated by the express terms or is necessarily implied from the character of the obligations assumed. (*Russell v. Ferrell,* supra.) Inasmuch as the instant contract did not specify a time limit within which the Deiters were to furnish merchantable title, it must be assumed that a reasonable time was intended.

The Deiters contend the lapse of time was sufficient cause for denying specific performance when considered in conjunction with the increase in the value of the property. While the contract price agreed upon by the parties was $11,200, there was testimony that the fair market value of the property at the time of suit was $32,500. As a general rule where parties have executed an agreement for the purchase and sale of real property the fact the value of the land has changed before the time of closing of the contract is not a sufficient reason in itself for refusing specific performance. (*Torluemke v. Abernathy,* 174 Kan. 668, 258 P. 2d 282; *Niquette v. Green,* 81 Kan. 569, 106 Pac. 270; *Greenwood v. Greenwood,* 96 Kan. 591, 152 Pac. 657; *Shell v. Strong,* supra.) Here, there was no evidence that the Hochards' delay in bringing suit was in bad faith or was done to speculate on a change in the value of the property. From all the evidence it appears the increase in value was a fortuitous circumstance unforeseen by the Hochards.

We do not believe the improvements made by the Deiters would justify a denial of specific performance. We find the general rule stated in 71 Am. Jur. 2d, Specific Performance, § 87, p. 118:

"Specific performance has been decreed in a number of cases notwithstanding the vendor had made improvements after executing a contract or option for sale of the property, the decree in some instances being conditioned upon reimbursement to the vendor of the value of such improvements, . . ."

In light of the surrounding facts and circumstances we conclude the Deiters' expense in building a fence around the property and adding two ponds should not preclude the enforcement of the contract, but should be left to the equitable discretion of the trial court as to any reimbursement. In like manner we believe the

fact the Deiters placed a mortgage on the property after execution of the contract should be referred to the equitable discretion of the trial court.

Where the parties have freely entered into a fair and reasonable contract and enforcement of its terms would not work a hardship or otherwise be inequitable, the parties are entitled to a decree of specific enforcement. We conclude the trial court erroneously refused to specifically enforce the contract. Accordingly, the case is reversed and remanded to the trial court with directions to enter an award of specific performance on such conditions as will result in an equitable adjustment of the rights of the parties.

Reversed and remanded with directions.

FROMME, J., dissenting.

SCHROEDER, J., not participating.