No. 27,090.

THE NORTH AMERICAN LIFE INSURANCE COMPANY, *Appellee*, v. JAMES DYATT and JOHN DYATT, *Appellants*, and C. A. LIENBACH, ROSEMARY LEINBACH, EDWIN BURNAP, Administrator of the Estate of Andrew Dyatt, deceased; ANDREW DYATT, and IRVING B. DYATT, by Guardian J. E. BURNAP, et al., *Appellees*.

### SYLLABUS BY THE COURT.

1. MORTGAGES—*Redemption—Waiver or Loss of Right—Fraudulent Transfer—Disclaimer of Interest.* In a proceeding to determine who of several contending parties is entitled to the right of redemption from a foreclosure sale, it is held that a former owner was not entitled to redeem because of fraudulent transfers and also disclaimers of interest in the land.

2. SAME — *Redemption — Waiver — Fraudulent Transfer Legally Determined.* The fraudulent purpose of the grantor and the invalidity of the transfer, including a contract of retransfer, are held to have been legally submitted and determined.

3. FRAUDULENT CONVEYANCES—*Pleading—Sufficiency as to Fraud.* In pleading misconduct it is not necessary to apply epithets to the conduct of a party or to employ the word "fraud" or "fraudulent" in order to characterize a transaction. It is enough to relate the facts as to the wrongs done and the law itself will draw the proper conclusions and measure the effect.

4. SAME—*Instruments Shown to be Fraudulent—Distinction Between Void and Voidable Immaterial.* In this proceeding the distinction between the terms "void" and "voidable" is of no practical importance, as the proof sufficiently showed that the instruments, although not void on their face, were actually fraudulent and of no effect.

5. SAME—*Findings—Evidence.* On examination of the evidence it is held that the findings are supported by the evidence and that proper conclusions are based thereon.

Fraudulent Conveyances, 27 C. J. pp. 653 n. 80, 655 n. 1, 661 n. 73, 773 n. 96; 12 R. C. L. 663. Judgments, 34 C. J. pp. 76 n. 69, 77 n. 78. Mortgages, 27 Cyc. pp. 1813 n. 17, 1857 n. 79; 19 R. C. L. 655.

6. JUDGMENTS—*Correction of Entry—Time for Correction.* A judgment entry may be corrected so as to make it speak the truth after the expiration of the term in which the judgment was rendered, and also after an appeal has been taken, and even after the judgment has been affirmed, following *State, ex rel., v. City of Stafford,* 99 Kan. 265, 161 Pac. 657.

Appeal from Sherman district court; CHARLES I. SPARKS, judge. Opinion filed November 6, 1926. Affirmed.

*A. E. Crane, A. H. Crane, B. F. Messick,* all of Topeka, *John Hartzler,* of Goodland, and *C. L. Kagey,* of Beloit, for the appellants.

*A. M. Harvey, R. C. Harvey, Frank Doster, J. E. Addington, J. B. Larimer, W. Glen Hamilton,* all of Topeka, and *Fred Robertson,* of Kansas City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This appeal presents another chapter in the *Leinbach v. Dyatt* litigation. The question involved here is who is entitled to redeem the lands sold to satisfy a judgment lien, and also from the sale under the judgment of foreclosure obtained by The North American Life Insurance Company.

The controversies among the parties were presented and determined in the action brought by the insurance company named to foreclose a mortgage on what is spoken of as the Dyatt ranch, containing about 16,000 acres. There was no contest in respect to the validity of that mortgage, and a judgment of foreclosure was entered by agreement of the parties. Under the decree the land was sold on June 8, 1925, to the insurance company, and on July 7, 1925, the sale was confirmed and the period for redemption fixed at eighteen months from the date of sale. In the contest among the defendants as to the right of redemption the pleadings and judgment in previous litigation between parties were introduced in evidence and additional evidence was produced with a view of showing the interests and rights of the contending parties respecting the matter of redemption. Much of the history of the litigation and its results may be found in the reported case of *Leinbach v. Dyatt,* 112 Kan. 782, 212 Pac. 894; and also *Leinbach v. Dyatt,* 117 Kan. 265, 230 Pac. 1074. A reference to the facts therein recited renders a full or detailed statement of many of the facts in the present controversy unnecessary.

A summary of the prominent facts are that J. B. Dyatt was the owner of the land in question, and that it had been mortgaged by him to the insurance company. He was also indebted to Leinbach,

and had contracted to convey 2,800 acres of the land to him in discharge of that debt. The agreement with Leinbach was broken, and in order to defraud Leinbach and defeat him in acquiring the land contracted for, J. B. Dyatt conveyed it to Andrew Dyatt, who knew of and participated in the fraudulent purpose of his brother. Leinbach brought an action against the Dyatts for specific performance of his contract with J. B. Dyatt, and in case specific performance could not be obtained, he asked for a money judgment, alleging that the transfer of the land to Andrew Dyatt was fraudulent and void. One of the principal questions in that case was whether or not the fraud of the Dyatts rendered the transfer to Andrew invalid. It was found by the court to be fraudulent and void as to Leinbach, and, instead of specific performance, the latter was awarded a money judgment for the amount due secured by a lien on the land deeded to Andrew. On appeal to this court that judgment was affirmed on February 10, 1923. (*Leinbach v. Dyatt,* 112 Kan. 782, 212 Pac. 894.) The judgment still stands without modification, and is a final determination of the questions involved in the case. In a later case Andrew Dyatt brought an action claiming that he had made payments on the mortgage debt to the insurance company, as well as for taxes on the land, and asking subrogation on the amounts so paid. In that action the fraudulent character of the transfer to Andrew was restated, and it was held in the trial court and affirmed in this court that the deed had been adjudged to be fraudulent, and because Andrew had fraudulently acquired title and possession of the land he was not entitled to invoke the equitable doctrine of subrogation to moneys he had paid on mortgage liens and for taxes on the land after he had fraudulently acquired it. (*Leinbach v. Dyatt,* 117 Kan. 265, 230 Pac. 1074.)

Among other things the trial court found that in other judicial proceedings between the parties J. B. Dyatt had pleaded, and also in some cases testified, that he had no interest in the land; that it was owned by Andrew Dyatt; and that as late as July, 1922, he testified that he owned no land in the United States or Canada; and further, that he had not contracted with Andrew for the purchase of any lands. It was found, too, that Leinbach was informed of these disavowals of any interest derived from Andrew and had relied on them in subsequent litigation. There was a finding that notwithstanding these disavowals of interest, an agreement had actually

been made between Andrew and J. B. Dyatt and his wife on June 24, 1919, in which it was recited that the deed of the land previously made to Andrew was to protect the ranch against a judgment that had been rendered in the federal court, and that when the judgment had been satisfied out of the proceeds of the sale of the lands, and any costs paid or advancements made in connection with the foreclosure, the remaining proceeds derived from the sales should be the property of J. B. Dyatt. It included a stipulation that any payments made by Andrew on certain notes, one for $5,980 and another for $8,000, owed by J. B. Dyatt, should be deducted from the proceeds of the sale before turning them over to J. B. Dyatt. This agreement was not placed on record or known to any one other than the parties to it until it was recorded in February, 1925, and it was found that it was a part of the fraudulent agreement to defraud Leinbach. There was a finding that Andrew died on June 18, 1924, leaving as his sole heirs at law his widow, Olive Dyatt, and his two sons, Andrew and Irving B. Edwin Burnap was duly appointed as administrator of the estate of Andrew Dyatt, and Olive Dyatt was appointed as guardian of her minor son, Irving B. It was shown and found that about May, 1919, Andrew Dyatt entered into a memoranda agreement with the defendant, John Dyatt, by which Andrew contracted to sell and John Dyatt to purchase, seventeen quarter sections of the land involved. Partial payments were made on this sale to the amount of $5,920. John Dyatt executed a note for $17,716, the balance of the purchase price on a certain part of the land, and at the same time a mortgage was executed by him to secure the payment of the note. A deed was executed to John Dyatt for this part of the land when the note and mortgage were executed. After the payments mentioned had been made on that contract there was still due $49,390. Another finding was that upon payment of the purchase price the property was to be conveyed to John Dyatt free and clear of encumbrances; and a further finding made that John Dyatt had no notice of the fraudulent character of the transactions between James B. Dyatt and Andrew Dyatt when he purchased the lands mentioned. The conclusion of the court was that J. B. Dyatt and Andrew Dyatt and those claiming under them was estopped from claiming any title or interest in any of the lands except as to John Dyatt, and that as he had purchased without notice of the fraudulent character of the transaction, he is

protected under the law in his purchase as against the Leinbachs; that the agreement of Andrew to convey the land back to J. B. Dyatt and Daisy, his wife, made on June 24, 1919, was a cloud on the title to the lands obstructing the enforcement of the judgment lien of Leinbach which was set aside and canceled of record; that the lands described in the deed made by James B. Dyatt to Andrew Dyatt, except those conveyed to John, are subject to the unsatisfied balance of the judgment lien of Leinbach against J. B. Dyatt; that Leinbach was entitled to execution for the sale to satisfy the balance of that judgment, and that the land is impressed with the lien of Leinbach. Another finding was that by the execution of the fraudulent deed from J. B. Dyatt to Andrew Dyatt, J. B. Dyatt divested himself as against Andrew Dyatt, and his heirs, of all right and title and interest in and to the lands mentioned in the deed, including the right of redemption. It was found too that the defendants Olive Dyatt, Andrew Dyatt and Irving B. Dyatt, are the owners of the record title upon certain lands described subject to the lien of the insurance company and of Leinbach, and are the owners of the right of redemption from the sale herein. Another finding is to the effect that Olive Dyatt, Andrew and Irving B. Dyatt have a purchase-money lien on the land sold to John Dyatt for the sum of $49,390; that John Dyatt, having paid less than one-third of the purchase price, had six months from the date of sale to redeem from the purchase made by the insurance company; that six months' period having elapsed, the same should be extended so as to give John Dyatt sixty days additional time within which to redeem from the purchase made by the plaintiff and also within which to pay the amount due to the heirs of Andrew. It was provided that if John Dyatt failed to pay within sixty days or to redeem the lands, he and his wife should be forever barred from claiming or asserting any right, title or interest in or to any of the lands. There was a specific finding of law that the conveyance made by Andrew Dyatt to James B. Dyatt on June 24, 1919, should be set aside and held for naught, and that the claim of James B. Dyatt for the right of redemption should be denied, and that he be barred from claiming or asserting any right, title or interest in and to the lands or any part thereof.

It is contended that the validity of the transactions between J. B. and Andrew Dyatt had never been litigated. The validity of the

deed executed by J. B. Dyatt to Andrew, his brother, in 1919 has been twice judicially considered, and it was determined that the deed was made to defraud Leinbach. It necessarily followed that as to Leinbach it was invalid and without legal efficacy. Under the record the invalidity of the deed was as fully adjudicated as if the word "canceled" had been used in the judgment. As to the contract of Andrew to pay to J. B. the proceeds of the sale, it has been found not only that its existence was concealed for nearly seven years, during which time the title or rights of these parties to the land were in contest in a number of actions, but that the contract itself was part of a fraudulent scheme designed to cheat and defraud Leinbach. J. B. Dyatt is now asking that this shuffling arrangement, which amounts to a transfer of the property in an effort to accomplish a fraud, shall be upheld. That kind of an agreement is frowned on by the courts, and an agreement to reconvey between grantor and grantee in order to accomplish a fraud is not even enforceable between them. Transfers made for a fraudulent purpose in which the parties seeking relief participated should be denied. (*Wyatt v. Collins*, 105 Kan. 182, 180 Pac. 789.) It has been said that:

"No obligation to reconvey, growing out of the fraudulent transaction or forming a part of it, can either be itself enforced or form the consideration of an enforceable promise or covenant, written or parol." (27 C. J. 661. See, also, *Poppe v. Poppe*, 114 Mich. 649.)

In addition to this view J. B. Dyatt has effectually barred himself by his solemn declarations in pleadings, and also by testimony given in a number of cases to the effect that all the interest in the land had passed from him, and on these declarations Leinbach relied.

It is contended that error was committed in permitting Leinbach to split up causes of action in the litigation. The claim is that the first action involved only the fraud as to part of the land, and that Leinbach had no right to attack the deed and contract in a later proceeding. The deed was attacked in its entirety and was adjudged to be fraudulent as against the rights of Leinbach. It is said that the fraudulent character of the transaction between the Dyatts was not properly pleaded, was not in terms alleged to be fraudulent, and therefore the validity of the deed had not been legally determined. The facts were stated as to the transfer, with the averment that it had been done for the purpose of defeating the rights of Lein-

bach. It was not necessary, however, that epithets should be applied to the conduct described in the pleading. It has been determined that it is not necessary in a pleading to emphasize that certain things were done fraudulently or wrongfully where the acts themselves as set forth show the fraud. (*Main v. Payne,* 17 Kan. 608-612.) It has been said that:

"Where the facts from which an inference of fraud may be drawn are well pleaded, it is not necessary to employ the word 'fraud' or 'fraudulent' to characterize the transaction. The bill need not state the conclusion which the law itself will draw from the facts stated." (27 C. J. 773.)

While specific performance was asked, Leinbach prayed for alternative relief in case specific performance was not available. It was found that specific performance could not be had, and so the court decreed a specific lien on the land sold to Leinbach and also a general lien on the remaining part of the land. There is no ground for the claim that there was a splitting of causes of action.

Nor is there any basis for the contention that the subsequent pleadings and inquiry brought a new cause of action into the case which was barred in two years after the first judgment against the Dyatts was rendered. The controlling question in that case, and throughout the litigation, was the fraudulent transfer of the land. The action attacking the transfer was brought in good time.

It is further argued that the contract and deed were at most voidable, but had been treated by Leinbach and also by the court as absolutely void. As the instrument in question did not on its face bear the evidence of invalidity, it was of course necessary for Leinbach to prove it to be fraudulent, and that was done. It having been judicially ascertained and declared, the law itself makes it a nullity, as void as if the contract showed on its face that it had been made in contravention of public law or policy. Under the facts of this case the distinction between void and voidable is of no practical importance, since the invalidity was established by abundant proof and has been judicially declared.

There is a contention that J. B. Dyatt's demurrer to the answer and cross petition of Leinbach, as well as the demurrer to his evidence, was erroneously overruled. It is apparent, however, from what has already been said that no error was committed in this respect. Neither do we find anything substantial in the claim that the findings are not sustained by the evidence.

In that branch of the appeal taken from the rulings with reference to the claims of John Dyatt, there is a contention that the findings of the court do not accord with the testimony and that requested findings have been erroneously denied. While the transfer of the land to Andrew was invalid as to the creditors, it was binding as between J. B. Dyatt and Andrew or between him and the heirs and representatives of Andrew. It was valid as against everyone except those defrauded by the transfer of J. B. Dyatt. (27 C. J. 653, 655.) John Dyatt, to whom a sale of a part of the land had been made by Andrew, entered into the contract of sale without knowledge of the fraudulent purpose of the transfer to Andrew. Some money had been paid on the contract, conveyance of a part of the land had been executed and possession taken. That contract being valid, there remained the question as to how much of the purchase price of the land was unpaid, and also the protection of the rights of John Dyatt. Testimony was given tending to show that after all credits had been allowed upon the purchase, he was indebted to the representative and heirs of the estate of Andrew in the sum of $49,300, and they were awarded a purchase-money lien on the land for that indebtedness. In order to protect the interest of John Dyatt, who had allowed the time of redemption to expire, the court granted him as a matter of equity an extension of sixty days for redemption or within which to pay the amount due on his purchase. The issues formed raised questions as to the purchase contract of John Dyatt, the payments that had been made thereon and the balance due for the land. While he questions the scope of the pleadings and the sufficiency of the proof, we think the issues were duly framed and tried out and that the testimony supports the findings made by the court. A considerable time after the judgment a question arose as to the completeness of the judgment entry, and upon application and notice a *nunc pro tunc* order was made reciting that the entry was not in strict compliance with the findings of fact and law and should be corrected so as to speak the truth. On July 8, 1926, it was corrected by formally declaring that the contract of June 24, 1919, and not recorded until February 26, 1925, had been canceled and set aside. It may well be doubted whether a modification of the entry was necessary, as the question had been tried out and upon the evidence the court had found that the contract was fraudulent and without effect. If it be assumed that a

modification was necessary, there is no doubt of the power of the court to correct a 'journal entry and make it speak the truth even after the judgment has been appealed from and reviewed by the appellate court. (*Edinburgh Lombard Inv. Co. v. Walsh,* 70 Kan. 899, 79 Pac. 688; *In re Hornung,* 81 Kan. 180, 105 Pac. 23; *State, ex rel., v. City of Stafford,* 99 Kan. 265, 161 Pac. 657.)

No material error is found in the record, and therefore the judgment is affirmed.

HARVEY, J., not sitting.