No. 33,139

FRANK W. DRURY, *Appellant*, v. LEOTA DRURY, *Appellee*.

(64 P. 2d 53)

Opinion filed January 23, 1937.

*Morris H. Cundiff*, of Wichita, for the appellant.

*D. W. Eaton*, of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is the third appearance of this case in this court. (*Drury v. Drury*, 141 Kan. 511, 41 P. 2d 1032; *Drury v. Drury*, 143 Kan. 83, 53 P. 2d 792.) The present appeal is from an order of the district court of Sedgwick county which altered the literal terms of a final judgment rendered almost three years previously.

The appellee would justify the order complained of on the ground that the record did not correctly recite the terms of the original judgment pronounced by the court, and that the order was merely the familiar one made *nunc pro tunc* to make the record speak the truth.

The controlling facts were these: On April 11, 1933, the district court of Sedgwick county rendered a judgment divorcing this appellant Frank W. Drury from this appellee Leota Drury. At the same time the court settled the property rights of the litigants, which so far as now pertinent may be stated thus:

Appellee was awarded $1,000 as permanent alimony, and this amount was made a lien on certain of appellant's property, to wit:

"Lots 18 and 20 on Carrie street, now Holyoke avenue, in Rawlins and Bridwell Subdivision of lots 5 and 6 in block 2 of Grandview addition to the city of Wichita, Sedgwick county, Kansas."

Order of sale and execution were authorized to satisfy this award. For convenience this will be referred to herein as the *Holyoke avenue* property.

By the same judgment two other pieces of real property standing in the name of appellant were decreed to him as his "sole and separate property . . . free and clear from any right, title and interest on the part of the [appellee] defendant." These two properties may be sufficiently described herein as the *Market street* property and the *South Lawrence avenue* property.

The alimony judgment, together with the costs, including attorneys' fees, not being paid, an order of sale was issued and on August 2, 1933, the sheriff sold the *Holyoke avenue* property to appellee for $750. Appellee had notice of this sale and was the only bidder, but she did not make her bid good, which vitiated the sale.

Appellee's attorneys were discharged and other attorneys were employed; and on August 11, 1933, a motion on behalf of appellee was filed "to reform and modify" the journal entry of April 11, 1933. On January 3, 1934, at a later term of court, that motion was sustained; and the court, "after hearing arguments of counsel and being fully advised in the premises, finds that the judgment as rendered in this action should be modified," did "modify and alter its previous judgment and order entered on April 11, 1933," by transferring the lien for securing the payment of the alimony from the *Holyoke avenue* property to the *Market street* property.

That order precipitated the first appeal. This court set the order aside, holding that the district court had no authority to modify a judgment by transferring an alimony lien from one piece of property to another after expiration of the term at which the original judgment was rendered. (*Drury v. Drury*, 141 Kan. 511, 41 P. 2d 1032.)

Meantime, the second firm of attorneys had dropped out of this litigation, and other counsel for appellee filed a praecipe for general execution against the property—any property—of the appellant. The sheriff levied on the *Market street* property and sold it to appellee for $1,144.

On motion of appellee this sale was confirmed, but within time the appellant moved to set it aside. This motion was overruled, and that ruling and related incidents provoked the second appeal, where this court on January 25, 1936, held:

"Where in a divorce action the wife is granted permanent alimony in a fixed sum of money which is made a lien on a specific portion of the real

estate decreed to the husband and it develops the property on which the lien was granted did not sell for a sufficient amount to satisfy the judgment of alimony, *held,* the wife cannot thereafter satisfy her judgment by means of execution sale out of other property specifically set aside in that decree to the husband as his sole and separate property, free and clear from any right, title and interest on the part of the wife." (*Drury v. Drury,* 143 Kan. 83, syl. ¶ 1, 53 P. 2d 792.)

Following that decision, the next maneuver on behalf of appellee was the filing of a motion in the district court, on February 1, 1936, for a *nunc pro tunc* order to "correct" the journal entry of judgment of April 11, 1933. In that motion it was alleged that the recitals of the journal entry which gave a lien on the *Holyoke avenue* property to satisfy the award of alimony was an inadvertence—

" . . . whereas in truth and in fact said judgment was by the order, judgment and decree made a first and prior lien upon the . . . [*Market street*] property of plaintiff."

Appellant joined issue on the allegations of the motion, and evidence both documentary and oral was adduced at length to determine it.

The trial court found—

"That by reason of inadvertence and irregularity in the preparation of the said journal entry the same does not correctly recite or show the judgment actually rendered by this court herein."

Pursuant to that finding the judgment of April 11, 1933, was corrected or changed to make the award of alimony a lien on the *Market street* property, and that execution should issue thereon. This last order was entered on February 26, 1936.

Hence, this third appearance of this case in this court. Appellant presents a formidable assignment of errors which may be summarized as a general objection to the net result.

At the outset it may be conceded that in our procedure and practice a trial court has power to correct its records, or to supply an omission in them, at any time—even after the term at which the judgment was rendered. It has power to make a record which will accurately recite the judgment which the trial court pronounced. (*Small v. Douthitt,* 1 Kan. 335; *Perkins v. Ashmore,* 144 Kan. 540, 61 P. 2d 888.) Indeed, the fact that the cause has been appealed and the ostensible but incorrectly recorded judgment has been reviewed by this court does not preclude a subsequent exercise of the inherent power of the trial court to correct the judgment record so that it may recite the actual judgment rendered by the court:

(*North American Life Ins. Co. v. Dyatt*, 121 Kan. 873, 250 Pac. 341.)

But is the instant case governed by these familiar rules for the *nunc pro tunc* correction of a journal entry of judgment? There was, indeed, a showing that on April 11, 1933, the court first announced that a lien on the *Holyoke avenue* property was given to secure the payment of the alimony judgment; and the reporter, pursuant to the practice in that court, made a note to that effect. Then the trial judge vacated the bench and retired to his adjacent chambers, and the reporter left the court room, assuming that the case was fully disposed of. And there was testimony that the appellee immediately expressed her dissatisfaction with the judgment because the *Holyoke avenue* property was mortgaged and appellant's equity in it might not sell for enough to satisfy the alimony judgment and costs; that she at once stated this fact to her counsel; and that he went to the judge's chambers, and that the judge returned to the court room and then and there changed the judgment so as to make the award of alimony a lien on the *Market street* property. It will not be denied that the court had full power to make such a change in the judgment and to render any other judgment it deemed proper, if or when such change, alteration, or different judgment was rendered within the term. In *Burnham v. Burnham*, 120 Kan. 90, 242 Pac. 124, it was held:

"Within the same term at which a judgment is rendered the trial court has absolute power over it, and may modify, alter, change or vacate it in whole or in part; and no error can be predicated upon the mere fact that at the conclusion of a trial the court first announced that its decision would be in favor of defendant, but ultimately and within the same term of court gave judgment in favor of plaintiff." (Syl. ¶ 1.)

But if full credence be given to the foregoing explanation of the alleged discrepancy between the actual judgment and the record of it, it will not justify the present belated action to remedy the existing status of the case of which appellant now complains, and this conclusion is constrained for the reasons which follow:

On January 3, 1934, when the second firm of attorneys filed their motion to *modify* the judgment rendered on April 11, 1933, that was the time—certainly the latest time, at least—to have the original journal entry corrected to speak the truth if it did not then speak it. Appellee then knew, and long prior thereto she had known, that the original judgment, as recorded, did not give a lien on the

*Market street* property. In her motion of January 3, 1934, she asked that the lien on the *Holyoke avenue* property be transferred to the *Market street* property. In support of that motion she tendered whatever issues she cared to raise. She did not then tender an issue that the original record did not recite the actual judgment rendered in her behalf. It is a fundamental rule of trial practice that when a justiciable issue is raised between litigants, everything pertinent to that issue is presumed to be raised or waived, and cannot afterwards be made the basis of a subsequent controversy between the same litigants. (*Clark v. Layman,* 144 Kan. 711, 716, 717, 62 P. 2d 897, and citations.) And since appellee was fully aware of the recitals of the journal entry of judgment of April 11, 1933, when she filed her motion on January 3, 1934, to change its recitals, and in that motion she stated her reasons for wanting it changed, any reasons she then withheld, any facts she was then aware of, which might have justified the change she desired, which she did not then present for the court's consideration, must be held altogether insufficient to warrant any change, alteration or correction (whatever euphemistic noun may now be suggested) by the order of court made pursuant to a subsequent motion filed some two years later.

This is an elementary rule of trial practice which the wisdom and long experience of the courts have devised to insure the finality of judicial decisions.

Again, in this case, as often happens, where one familiar rule of law compels a certain conclusion, other rules of law equally potent will point inevitably to the same result. When this appellee had notice of the sale of the *Holyoke avenue* property as judgment creditor and participated in it as a bidder, by the simplest and most elementary rules of equity and good conscience she was estopped from thereafter claiming that the judgment record upon which the execution on the *Holyoke avenue* property was had was inaccurate. It was on her initiative that that sale was conducted. Evenhanded justice between appellee and her ex-husband require that her conduct in that instance be regarded for precisely what it was, estoppel and acquiescence in the judgment as originally chronicled.

The judgment of the district court is reversed and the cause remanded with instructions to set aside its order of February 26, 1936, and to deny the motion filed on February 1, 1936, and to award the appellant his costs, and to dismiss this proceeding.